IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | CIVIL ACTION NO. 2:22-CV-3071 |
| Plaintiff, | ) ) | COMPLAINT |
| vs. | ) ) | JURY TRIAL DEMANDED |
| ASPIRE REGIONAL PARTNERS, INC., MSTC DEVELOPMENT, INC., SPRINGFIELD SNF, INC., and SPRINGFIELD CLARK ALF, INC., | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## NATURE OF THE ACTION

The U.S. Equal Employment Opportunity Commission (the Commission or the EEOC) brings this action against Aspire Regional Partners, Inc., MSTC Development, Inc., Springfield SNF, Inc. d/b/a Northwood Skilled Nursing and Rehabilitation, and Springfield Clark ALF, Inc. d/b/a Northwood Assisted Living Facility (collectively Aspire or Defendants) to remedy violations of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex orientation, and to provide appropriate relief to the Charging Party Anthony Ayers-Banks. As alleged with greater particularity below, the EEOC alleges that Defendants unlawfully discriminated against Charging Party by subjecting him to disparate treatment and terminating his employment.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Ohio.

3.      Each named Defendant or Defendants individually and/or collectively own, operate, and manage regulated care facilities throughout Southern Ohio and in the Columbus, Ohio area.

4.      While he worked at the care facilities described above, Charging Party lived in Columbus, Ohio.

5.      Persons with relevant knowledge of Charging Party's employment and third parties with relevant knowledge, information, and records are located in Columbus, Ohio, including government entities that conduct inspections of care facilities and assess conditions related to facility maintenance.

PARTIES

6.      The EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

7.      Each named Defendant or Defendants individually and/or collectively owned, operated, and managed the care facilities where Charging Party worked in a maintenance director position.

8.      At all relevant times, Defendant Aspire Regional Partners, Inc. has been an Ohio corporation, has continuously been doing business in the State of Ohio, and has continuously had at least 15 employees.

9. At all relevant times, Defendant Aspire Regional Partners, Inc. has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

10. At all relevant times, Defendant MSTC Development, Inc. has been an Ohio corporation, has continuously been doing business in the State of Ohio, and has continuously had at least 15 employees.

11. At all relevant times, Defendant MSTC Development, Inc. has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

12. At all relevant times, Defendant Springfield SNF, Inc., d/b/a Northwood Skilled Nursing and Rehabilitation has been an Ohio corporation, has continuously been doing business in the State of Ohio, and has continuously had at least 15 employees.

13. At all relevant times, Defendant Springfield SNF, Inc. has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

14. At all relevant times, Defendant Springfield Clark ALF, Inc., d/b/a Northwood Assisted Living Facility has been an Ohio corporation, has continuously been doing business in the State of Ohio, and has continuously had at least 15 employees.

15. At all relevant times, Defendant Springfield Clark ALF, Inc. has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

<u>ADMINISTRATIVE PROCEDURES</u>

16.     More than thirty days prior to the institution of this lawsuit, Charging Party filed a charge with the EEOC alleging violations of Title VII by Defendants.

17.     On August 27, 2021, the EEOC issued to Defendants a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

18.     After engaging in communications with Defendants concerning the employment discrimination described in the Letter of Determination, the EEOC was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

19.     On March 2, 2022, the EEOC issued to Defendants a Notice of Failure of Conciliation advising Defendants that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

20.     All conditions precedent to the initiation of this lawsuit have been fulfilled.

<u>STATEMENT OF CLAIMS</u>

21.     In October 2019, Charging Party was hired to work in a maintenance director role at the care facilities described above which are known as the Northwood Assisted Living and Skilled Nursing facilities.

22.     Each Defendant was an employer of Charging Party, and/or Defendants employed Charging Party as an integrated enterprise.

23.     During the course of Charging Party's employment, each Defendant was an employer and engaged in acts or omissions that were causally related to the disparate treatment to which he was subjected and/or the discriminatory termination of his employment.

24. Defendants, individually or collectively, subjected Charging Party to discrimination because of his sex orientation in violation of Title VII.

25. In October of 2019, Charging Party was hired to work in a maintenance director position at the care facilities described above.

26. Charging Party was qualified for the position he held at the care facilities.

27. During the course of his employment at the care facilities, Charging Party performed a variety of functions, including but not limited to assisting residents with their housing needs. For example, Charging Party assisted management and residents with pandemic-related relocation, including transferring and sanitizing facility equipment, helping to move residents to safer locations in the facilities, handling repairs or alterations to beds and other equipment, and otherwise assisting with internal modifications related to Covid-19 protocols.

28. Charging Party performed his job well. Charging Party addressed concerns about facility conditions impacting resident wellness, notified management of recommended upgrades or improvements, and complied with management directives concerning facility maintenance.

29. At no time before his termination was Charging Party put on a performance improvement plan, nor did he receive an unsatisfactory performance evaluation or notice of disciplinary action.

30. Aspire Regional Director Michael Thompson advised the EEOC that on or about April 27, 2020, he began overseeing the care facilities where Charging Party worked. As Regional Director, Thompson managed facility operation including employees working at the care facilities identified above.

31.    In his role as Regional Director, Thompson interacted with Charging Party concerning work assignments, addressed work orders, and otherwise managed Charging Party, his workload, and the scope of his work.

32.    After Thompson began overseeing the facilities, other management also interacted with Charging Party concerning work assignments and managed his work.

33.    Charging Party complied with the Regional Director's directives, and those of other facility management, and fulfilled his assigned job duties.

34.    After April 2020, Charging Party was advised that changes were being made to the parameters of his maintenance director role, including reducing his access to materials and limiting his authority.  The reduction adversely affected the scope of Charging Party's position and capacity to carry out his assigned duties.

35.    Charging Party was treated less favorably because of his sex orientation, including minimizing his capacity to address facility maintenance and rejecting or ignoring his recommendations for facility improvement.

36.    Other personnel outside of Charging Party's protected classification who had responsibility for maintenance conditions were treated more favorably than Charging Party, including but not limited to being held to less stringent standards, receiving education and managerial support when issues arose, and retaining their employment.

37.    During the course of Charging Party's employment other action was taken in an effort to justify adverse action taken against him including but not limited to issuing him contradictory directives, withholding resources, and otherwise interfering with facility maintenance.

38.     On July 27, 2020, the Regional Director met with Charging Party and told him that the company had decided to go in a "different direction" and, therefore, Charging Party should resign.   The Regional Director said that Charging Party should submit a 30-day resignation notice to avoid being fired.

39.     As of July 27, 2020, Charging Party had not been put on a performance improvement plan, nor had he received an unsatisfactory performance evaluation or been notified of disciplinary action taken against him.

40.     The reasons given for the assertions made and action taken during the July 27 meeting and the employer's decision to fire Charging Party if he did not resign are a pretext.

41.     After the July 27 meeting, Charging Party advised management that he believed he was performing the job well and that he declined to resign.

42.     Between July 27 and September 1, Defendants sought to develop and tried to gather additional pretextual reasons to support their decision to fire Charging Party, and they continued to subject him to unfavorable treatment as described above.  Recommendations were made that if Charging Party's job performance truly was deficient, he should be notified of the deficiencies in a performance improvement plan or other personnel action documentation providing him with a period of time during which he could address the purported deficiencies. Those recommendations were ignored or rejected, and Defendants continued to search for pretextual reasons that were believed to provide support for the decision to fire Charging Party.

43.     On September 1, 2020, management met with Charging Party and advised him they had been directed to fire him for poor performance although his performance was not deficient.

44.     Charging Party was fired effective September 1, 2020.

45. Defendants, individually or collectively, subjected Charging Party to discrimination because of his sex orientation in violation of Title VII, as described above.

### TITLE VII: DISCRIMINATION BECAUSE OF SEX ORIENTATION

46. The EEOC incorporates paragraphs 1 through 45, as if fully set forth herein.

47. The effect of the practices described above has been to deprive Charging Party of equal employment opportunities and otherwise adversely affect his status as an employee because of his sex orientation.

48. The unlawful employment practices described above were intentional.

49. The unlawful employment practices described above were done with malice or with reckless indifference to the federally protected rights of Charging Party.

50. As a result of the violations described above, Charging Party was deprived of wages, employment benefits, and other harm that is compensable pursuant to Title VII.

### PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining each Defendant and/or Defendants collectively, their officers, successors, assigns, and all persons in active concert or participation with them, from discriminating because of sex orientation, including engaging in disparate treatment, depriving persons of compensation, opportunities, and other benefits of employment, and from engaging in any other employment practices that discriminate because of sex orientation.

B. Order each Defendant and/or Defendants collectively to institute and carry out policies, practices, and programs which provide equal employment opportunities for persons

notwithstanding sex orientation and which eradicate the effects of their past and present unlawful employment practices.

   C.  Order each Defendant and/or Defendants collectively to make whole Charging Party, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of the unlawful employment practices, including but not limited to reinstatement and/or front pay.

   D.  Order each Defendant and/or Defendants collectively to make whole Charging Party by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

   E.  Order each Defendant and/or Defendants collectively to make whole Charging Party by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including but not limited to emotional pain, suffering, and humiliation, in amounts to be determined at trial.

   F.  Order each Defendant and/or Defendants collectively to pay Charging Party punitive damages for their malicious and reckless conduct, in amounts to be determined at trial.

   G.  Grant such further relief as the Court deems necessary and proper in the public interest.

   H.  Award the Commission its costs of this action.

JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Washington, D.C.

GWENDOLYN REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel


s/Debra M. Lawrence
Regional Attorney

s/Kate Northrup
Supervisory Trial Attorney

s/Jessi D. Isenhart
Senior Trial Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Cleveland Field Office
1240 E. 9th Street, Suite 3001
Cleveland, OH 44199
jessi.isenhart@eeoc.gov
Phone: (216) 306-1121